UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| JESSICA TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | 2:15-CV-00265-JRG |
| | ) | |
| vs. | ) | |
| | ) | |
| BROCK SERVICES, LLC, LIBERTY MUTUAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendants | | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to 28 U.S.C. § 636 and by Order of Reference filed by the District Court referring the matter for a Report and Recommendation [Doc. 28]. Before the Court are the parties' cross-motions for summary judgment. [Doc. 23, 25]. Both parties have had an opportunity to file any respective responses and replies. The motions are now ripe for judgment.

**I.      BACKGROUND**

On May 1, 2014, Liberty Mutual Insurance Company ("Liberty Mutual") issued a group disability policy (the "Policy") to Defendant Brock Services, LLC ("Brock Services"). Liberty Mutual served as the issuer and administrator of the Policy. The Policy grants Liberty Mutual full discretion to interpret the terms and conditions of the Policy [Administrative Record (AR) at 271]. There is no dispute that the Policy is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA").

Plaintiff Jessica Taylor ("Taylor") worked for Brock Services when she began suffering from lower back pain unrelated to her job. After the pain did not subside, Taylor went to see her

1

family physician Dr. Charles Montgomery in Greeneville, Tennessee.[1] She applied for and received leave under the Family Medical Leave Act.

On September 24, 2014, Taylor applied for short term disability ("STD") benefits [AR at 205]. She described her injury as "having back pain." [*Id.*] In his "Attending Physician's Statement," Dr. Montgomery diagnosed her with "low back pain" and noted that she previously had back surgery six years prior [AR at 201]. Dr. Montgomery noted her prognosis was "good," and estimated she could return to work on October 8, 2014 [*Id.*] He classified Taylor's physical impairment as a Class 4 out of 5, or "moderate limitation of functional capacity, capable of clerical/administrative activity." [*Id.*] He also noted that she was "awaiting neurosurgery consultation for back pain," referring her to see Dr. David Wiles at East Tennessee Brain and Spine ("ETBS") [AR at 202].

Liberty Mutual approved her STD application through October 9, 2014 to permit her time to see Dr. Wiles at ETBS [AR at 200]. On October 9, 2014, Taylor met with Isaac O'Dell, PA-C at ETBS who advised Liberty Mutual that he suspected Taylor may have "acute parametritis and pelvic cellulitis," and recommended she remain off work until she could have an MRI, which was scheduled for October 23, 2014 [AR at 199]. Liberty extended STD benefits through November 10, 2014 [AR at 13, 186].

---

[1] In her Complaint, Taylor alleges that before seeing Dr. Montgomery, she sought treatment at the Laughlin Memorial Hospital's Emergency Room in Greeneville, Tennessee. She further claims the Emergency Room doctor "put plaintiff off work for a few days and released her to return to work the following Monday." [Doc. 1, pg 3]. On her disability claim form, however, Taylor only listed Dr. Montgomery as the treating doctor. There are records from Laughlin Memorial Hospital dated September 10, 2014 [*see* AR 113-14, 120], but those records do not contain any recommendation for her not to return to work. Most notably, however, this Emergency Room visit does not appear to be a part of the basis for her disability claim. The Court in its review of the benefits determination is limited to what is contained in the Administrative Record.

On November 10, 2014, Taylor met again with ETBS who reviewed the MRI of the lumbar spine and the pelvis. Concerning the lumbar spine, it noted "mild degenerative changes with subtle annular tear at L5-S1 but no significant nerve root displacement … to explain her right lower extremity pain." [AR at 75, 81-82]. The MRI of the pelvis noted "stable perineural scarring involving multiple right and left sacral nerve roots…[and] stable relative enlargement of the right piriformis muscle." [AR at 76, 84-85]. At this point, ETBS recommended proceeding with a electromyogram and nerve conduction study and again recommended she remain off work until those could be completed [AR at 76]. O'Dell noted, however, that "If the EMG does not show a definitive surgical issue, then we will not be able to keep her off work any further at that point and we would have nothing further to offer." [AR at 166]. ETBS scheduled Taylor for a follow up visit on December 8, 2014 [AR at 166]. Liberty Mutual extended her STD benefits to December 8, 2014. [AR at 157].

On November 24, 2014, at Liberty Mutual's request, Dr. Wiles completed a Restrictions Form in which he indicated Taylor could perform sedentary work through December 8, 2014, the date of her next office visit with ETBS [AR at 163]. On December 8, 2013, Taylor had a follow up visit with ETBS. ETBS performed a physical examination which revealed normal motor strength in the upper and lower extremities [AR at 108]. The EMG and nerve conduction studies "show a mild chronic lesion of the S1 nerve root on the right." [AR at 108]. At this point, Wes Perry, PA-C, with ETBS, released Taylor without restrictions to return to work as of December 15, 2014 [AR at 109, 147]. Along with the release form completed by Perry was Taylor's detailed job description [AR at 147].

On December 9, 2014, Liberty Mutual contacted Taylor to confirm that she was released to return to work [AR at 11-12]. Taylor represented that she was told by her doctor that she could

3

return on December 15 and averred that she would be there despite the fact that she was still in pain [AR at 11]. As a result, Liberty Mutual extended Taylor's STD benefits through December 14, 2014 [AR at 149]. Taylor returned to work on December 16, 2014.

On December 18, 2014, Dr. Terry Puckett examined Taylor for fitness for duty and restricted her work to sedentary duty, no hazardous duty, and no duties if no accommodations could be made [AR at 140, 145]. As a result of Dr. Puckett's restrictions, Liberty Mutual reopened and approved extending STD benefits [AR at 11, 144]. On December 29, 2014, Nurse Jennifer Turner reviewed Taylor's file, noting that there were "no physical exam findings included in [the] medical records," and recommended that Dr. Puckett be contacted for a clinical update to obtain clarification as to the severity of Taylor's condition, anticipated duration, and the plan to return her to work [AR at 10-11].

On January 7, 2015, Dr. Puckett's office forwarded Taylor's medical records it had to Liberty Mutual [AR at 131-33]. Nurse Turner reviewed Dr. Puckett's records, noting that Dr. Puckett restricted Taylor to sedentary duties because of her subjective reports of pain and "unremarkable exam findings." [AR at 10]. In light of this, Nurse Turner called Dr. Puckett to obtain clarification on the severity of Taylor's impairment and its expected duration [AR at 10]. He indicated his recommendations were based on "worsening neuropathy symptoms," as Taylor reported that the medication she was taking was not working for her [AR at 9]. He was unable to estimate the duration of her disability at that time.

On January 26, 2014, Taylor again returned to ETBS. She reported that she still was having pain [AR at 64-67]. Taylor reported that though she returned to work as planned "they put her back off due to the side effects of Gabapentin." [AR at 64]. Taylor reported that it had made her "feel weird and just not with it." [AR at 64]. The dosage was apparently reduced and Taylor

4

reported that "she is tolerating it now" but had no improvement in her symptoms [AR at 64-65]. On this date, her physical exam was unremarkable. ETBS noted she had a healthy-appearing general appearance; a normal mood and affect; normal motor strength and tone; normal movement of all extremities; normal gait; normal curvature of the back; for the lumbar spine, normal in all active ranges of motion; and 5/5 for strength extensions on both knee and hip flexors [AR at 66-67]. ETBS discontinued Taylor on Gabapentin and started her on Lyrica [AR at 67].

Liberty Mutual approved an extension of STD benefits through February 2, 2015 and requested additional medical records from ETBS [AR at 7, 91]. Based upon the review of the records, on February 5, 2015, Nurse Turner determined that STD benefits were not supported beyond December 15, 2014 [AR at 6]. Nurse Donna Paine then reviewed the medical records and concluded that she needed additional information from Dr. Puckett to clarify why he had not released Taylor to return to work [AR at 6]. Dr. Puckett advised Nurse Paine that his opinion was based on Taylor's subjective reports of pain and her claim that Neurontin made her sedated. For those reasons, Dr. Puckett believed Taylor could only perform sedentary duty, and would be a safety risk if she performed her usual job with her symptoms as she described them [AR at 43-44].

Notwithstanding Dr. Puckett's explanation, Nurse Paine concluded, like Nurse Turner, that the medical records did not support continuing Taylor's disability after December 15, 2014 [AR at 4-5]. She based this conclusion on ETBS's "more comprehensive notes and normal exam findings" as opposed to Dr. Puckett who based his opinion on Taylor's subjective reports of pain [AR at 4-5]. On February 16, 2015, Liberty Mutual's Sarah Konecke, a manager at Liberty Mutual, reviewed Taylor's claim and concurred with the decision to terminate STD benefits. She based this on both the medical evidence in the file and the findings of review and concluded that

the "information received does not provide restrictions and limitations that would preclude [Taylor] from performing occupation beyond 2/2/15." [AR at 4].

On April 28, 2015, Taylor appealed Liberty Mutual's decision to terminate her STD benefits [AR at 33]. Along with her appeal, Taylor submitted records from Blue Ridge Neuroscience Center, P.C., ("BRNC"). Those records indicated she was scheduled for a lumbar myelogram and post myelographic CT scan. On April 13, 2015, Dr. Ken Smith opined that Taylor could not return to work for "another 4-5 weeks," highlighting that Taylor was "to have PT and a lumbar myelogram…further work issues will be [at] next [appointment] on 5-18-15." [AR at 39].

On May 19, 2015, BRNC provided Liberty Mutual its records on Taylor [AR at 24-32]. Under the "Employment History," Dr. Ken Smith noted that Taylor is "currently unable to work as a document coordinator for Brock Services." [AR at 25]. He also noted in the "History of Present Illness" that Taylor had left side low back pain and right leg pain with the majority of Taylor's leg pain being "confined to the right calf and along the bottom and outside of the right foot." [AR at 25]. He indicated that her pain medication, Lyrica, was not effective "and also expensive" [AR at 25]. He noted no significant change in her condition since her last visit. He noted that Dr. Kelly Cassedy, a board certified neuroradiologist, indicated there was no "focal abnormality on the lumbar myelogram" or the MRI of the pelvis "to account for her right leg pain in an S1 distribution." [AR at 27]. He also concluded that "At this time, there is no etiology to account for her right leg pain…." [AR at 27].

On May 21, 2015, Nurse Case Manager ("NCM") Christine Ohara reviewed Taylor's claim [AR at 2-3]. She concluded that the "updated medicals do not alter previous MDS assessment of no supported [continued disability] as evidenced by lack of physical and diagnostic findings." [AR at 2]. Taylor's appeal was then referred to Liberty Mutual's Appeals Unit for claim review and

6

determination. [AR at 2]. On June 5, 2015, Tara Ferguson, Appeal Review Consultant, conducted a review of Taylor's file and upheld the denial of benefits beyond February 2, 2015. [*Id.*] In a letter to Taylor on the same date, Ferguson explained the basis for her denial:

> While we acknowledge that you may have symptoms associated with your condition, the available records do not substantiate the presence of a disabling condition that would warrant ongoing occupational restrictions and limitations. You did not submit any physical therapy records with your request for review. Although Dr. Smith noted tenderness on exam, no range of motion limitation and normal muscle strength and tone were documented. The available medical information does not contain physical exam findings or diagnostic test results substantiating that your symptoms remained of such severity, frequency and duration that they resulted in functional limitations rendering you continually unable to perform the duties of your job beyond February 2, 2015.
>
> Therefore, in the absence of clinical evidence to support your inability to perform the activities consistent with those required to perform your job as a Warehouse Document Coordinator (Warehouseman) you do not meet the definition of disability beyond February 2, 2015 and we have determined that the denial of Short Term Disability benefits was appropriate and is supported by the medical information contained in your claim file.
>
> This claim determination reflects an evaluation of the claim facts and policy provisions.

[AR at 18]. Taylor subsequently filed the instant action on September 29, 2015.

## II. ANALYSIS

### A. Standard of Review

Plaintiff filed a Complaint against Liberty Mutual and Brock Services under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA") [Doc. 1]. "ERISA requires that '[e]very employee benefit plan . . . be established and maintained pursuant to a written instrument.'" *Adams v. Gen. Motors Co.*, 547 F. App'x 661, 663 (6th Cir. 2013) (quoting 29 U.S.C. § 1102(a)(1)). When "the plan administrator is given the discretionary authority to determine eligibility for benefits or to construe the plan terms, [the courts] review the administrator's decision to deny benefits using 'the highly deferential arbitrary and capricious

standard of review.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006)(quoting *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)). Both parties agree that given the terms of the Plan that grant full discretion to Liberty Mutual to interpret and apply the terms and conditions of the Policy, the arbitrary and capricious standard of review applies [*See* Doc. 24, *Plaintiff's Memorandum,* pg, 14; Doc. 26, *Defendant's Memorandum,* pg. 11]. The Court concurs with this assessment based upon the authority granted to Liberty Mutual in the Policy. The Court notes that "[t]his standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Evans*, 434 F.3d at 875.

While the arbitrary and capricious standard is deferential, "it is not, however, without some teeth." *McDonald v. Western–Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003). "[M]erely because [the] review must be deferential does not mean [it] must also be inconsequential." *Evans*, 434 F.3d at 876. Under this standard of review, the determination of an administrator regarding whether to deny benefits under ERISA will be upheld if it is rational in light of the plan's provisions. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014).

    **B.    Fiduciary Claim**

In her motion for summary judgment, Taylor argues that Liberty Mutual is a fiduciary and as such "was under a statutory duty, pursuant to ERISA, to pay all qualified claims under the plan." [Doc. 24, pg. 20]. It appears that her argument, based on a review of her complaint and her motion for summary judgment, is that Liberty Mutual breached the terms of the Policy by not paying the claim. She has not alleged an injury separate from the denial of benefits claim. Instead, she argues that as a fiduciary, Liberty Mutual wrongfully denied her disability benefits. It is impossible to

8

infer from her complaint that she is asserting a cause of action for a breach of fiduciary duty because the complaint simply does not allege any facts to support it.

In any event, she cannot maintain both a breach of fiduciary claim and a breach of contract claim where both are based on the same conduct. In *Rochow v. Life Insurance Company of America*, 780 F.3d 364, 372 (6th Cir. 2015), the Sixth Circuit stated:

> A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate.

*Id.* Because Taylor has not alleged any injury other than a denial of benefits, her claim is properly considered a breach of contract/denial of benefits claim.

### C. Breach of Contract/Denial of Benefits Claim

#### 1. Short-term Disability Benefits

As noted, the Court reviews Liberty Mutual's decision to terminate Taylor's STD benefits on an arbitrary and capricious standard. Taylor pursues a two prong argument in her discussion of the arbitrary and capricious standard, dividing this standard into "structural" and "procedural" components. The Court will address Taylor's arguments as she presents them. Taylor argues that "the structural prong of the two-prong abuse of discretion test is shown by (i) the inherent conflict of interest that exists between Liberty Mutual, as both the administrator and profit-generating entity, and the plaintiff, and (ii) the ambiguous language of the policy." [Doc. 24, pg. 20]. It is true, that in applying the arbitrary and capricious standard, the Court must consider whether a conflict of interest exists on the part of the decision-maker. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552-53 (6th Cir. 2008). In this case, there is no dispute about that issue as Liberty Mutual concedes that it is both

the decision-maker and payor under the Policy [Doc. 26, pg. 2]. However, "mere allegations of the existence of a structural conflict of interest are not enough to show that the denial of a claim was arbitrary[.]" *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir. 1998). Sixth Circuit case law "requires a plaintiff not only to show the purported existence of a conflict of interest, but also to provide 'significant evidence' that the conflict actually affected or motivated the decision at issue." *Cooper v. Life ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007)(quoting *Peruzzi*, 137 F.3d at 433).

Taylor has not presented any evidence that this conflict actually "affected or motivated the decision" to terminate her STD benefits. *Id.* The structural decision-making process seems to have been sound. Liberty Mutual approved Taylor's initial STD application to permit her to be examined by other physicians and physician assistants. Taylor underwent extensive diagnostic and physical examinations to determine the basis of her disability. Liberty Mutual reviewed those reports and considered the opinion of the physicians and physician assistants at ETBS who opined that Taylor could return to work without restrictions. In other words, Liberty Mutual's decision to terminate Taylor's STD benefits was not based on a file review alone. Instead, the nurse reviewers focused on the physical examination and diagnostic test results conducted by ETBS.

This was not a situation where Liberty Mutual was "second-guessing … [the] treating physicians" and making "credibility determinations." *Judge v. Metro. Life. Ins. Co.,* 710 F.3d 651, 663 (6th Cir. 2013). Instead, it relied on the medical opinions of those at ETBS who stated Taylor could return to work without restrictions. To be sure, but for the records from ETBS, a decision to terminate Taylor's STD benefits would have been on thin ice and not likely have survived review. But, that is not the posture of the case. See *Shaw v. AT & T Umbrella Ben. Plan No. 1*,

10

795 F.3d 538, 550 (6th Cir. 2015)("the Plan's decision to conduct only a file review supports a finding that the decision-making was arbitrary and capricious").

The second aspect of Taylor's "structural" prong argument is focused on the terms of the policy. Taylor argues that the terms of the Policy are ambiguous and vague as to be subject to the "whim and whimsies" of Liberty Mutual [Doc. 24, pg. 22]. She claims that the definition of "material and substantial duties," "disability," and "nonverifiable symptoms" are all simply too ambiguous to provide any meaningful standard. *Id.* Liberty Mutual counters that those terms are not ambiguous because they are not susceptible to more than one meaning. [Doc. 26, pg. 2].

Turning to those terms, the Policy defines "Disability" as it relates to STD, to mean "the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Job." [AR at 225]. It defines "Material and Substantial Duties" to mean "responsibilities that are normally required to perform the Covered Person's Own Job and cannot be reasonably eliminated or modified." [AR at 229]. Finally, the Policy defines "Non-Verifiable Symptoms" to mean "the Covered Person's subjective complaints to a Physician which cannot be diagnosed using tests, procedures or clinical examinations typically accepted in the practice of medicine. Such symptoms include, but are not limited to, dizziness, fatigue, headache, loss of energy, numbness, pain, ringing in the ear, and stiffness." [AR at 230].

In support of her argument, she argues that if Liberty Mutual can ignore the "objective" findings of her physicians, then the terms are "subject to multiple interpretations." [Doc. 24, pg. 22]. In reality, Taylor's argument is not a definitional one, but one based on application. The terms are quite clear and specific. It is important not to lose the forest for the trees. To be disabled under the Policy is to have an injury or a sickness that prevents one from doing the material and

11

substantial duties of her job. The Policy defines sickness to "mean[] illness [or] disease…." [AR at 233]. Taylor's argument that the Policy is too ambiguous to be enforced is without merit.

Taylor next contends that Dr. Puckett "objectively found that her medication regimen prohibited her from working," and that Dr. Smith found the same objective findings and also restricted her from work[2] [Doc. 24, pg. 23, 25]. She further argues that objective changes in her spine illustrate her subjective complaints of pain, and that ETBS's opinion that she could return to work unrestricted was "based upon an assumption . . . that [she] would be clear to return to work at full duty if she could tolerate her medication." [Doc. 24, pg. 27]. She argues that Liberty Mutual terminated her benefits without evaluating whether she could perform the specific job demands of her former position, rendering its decision an abuse of discretion.

Taylor notes that Liberty Mutual ignored the objective medical evidence supporting a finding of disability. She argues that Dr. Wiles's opinion should not be relied upon because it was limited in scope to only whether surgical intervention was needed as a basis to restrict Taylor from work. She emphasizes that "the report specifically did NOT say . . . if there [was anything] that could be done from a neurosurgical perspective for plaintiff." [Doc. 24, pg. 12] (emphasis in original). Taylor also noted that while "the exam was normal, there was a diagnosis of neuritis," and "PA Perry's note also showed a mild, chronic S1 radiculopathy on the right, with no surgical lesion." [*Id.*] Moreover, Taylor argues that no records appear that Taylor was examined by the

---

[2] Taylor argues under both her "structural" and "procedural" prongs that objective medical evidence supports a finding that Taylor was disabled. Rather than divide the issue, the Court will address whether Liberty Mutual's decision to terminate Taylor's STD benefits was arbitrary and capricious, that is, whether it was rational in light of the Plan's provisions. *See McClain*, 740 F.3d at 1064.

12

office after December 10, 2015, and thus no one could testify concerning the effects of Neurontin on Taylor, which allegedly prompted Dr. Puckett to place her on restrictions in the first instance.[3]

Here, the "ultimate issue . . . is not whether discrete acts by the plan administrator [were] arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 660 (6th Cir. 2013). The crux of this matter is whether Liberty Mutual had a rational basis to terminate Taylor's STD benefits. In this case, Taylor presented medical evidence that she could not return to work. But that is not all that is present in the administrative record. ETBS did not come to the same opinion as Dr. Puckett and Dr. Smith. The administrative record contains multiple differing opinions about Taylor's ability to return to work. When multiple doctors' opinions are in the record, the Sixth Circuit has explained as follows:

> Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

*Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006); *Allen v. Life Ins. Co. Of N. Am.,* 504. Fed. App'x 435, 440 (6th Cir.2012) (holding that, where conflicting medical evidence exists, the claims administrator is not required to rely solely on one opinion over another).

Notably, unlike in the Social Security context, treating physicians are not given mandatory deference under ERISA. *Id.* The Supreme Court has held "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit

---

[3] The Court notes that, contrary to Taylor's assertions, Taylor was seen at ETBS on January 26, 2015. [AR at 64-67].

13

reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The Court did caution, however, that "plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* But that is not what occurred here. Liberty Mutual had a rational basis to rely on the medical opinions of ETBS who, only after performing diagnostic tests and physical examinations, concluded that Taylor could return to work.

Taylor cites to *Simon v. Prudential Insurance Company of America,* No. 10-42876, 2011 WL 2971203, at *4 (D.N.J. July 20, 2011), to argue Liberty Mutual erred when it refused to follow Dr. Puckett's recommendation. Dr. Puckett was Liberty Mutual's own physician. In *Simon,* Prudential's medical expert concluded the medical records raised questions that necessitated further evaluation; Prudential, without further evaluation or any follow up, ignored its expert and denied benefits. *Id.* That is not what happened here. Liberty Mutual followed up numerous times with Dr. Puckett to clarify his position; it did not merely ignore his findings. Although Dr. Puckett did in fact restrict Taylor's return to work, he did so based upon Taylor's subjective reports of pain and allegations that the pain medicine was not working. Dr. Puckett did not conduct any independent medical tests or evaluations. Conversely, Liberty Mutual had the medical opinion of ETBS and its thorough evaluation, and its conclusion that the results of all of the diagnostic tests were normal and that Taylor could return to work without restrictions. [*See* AR at 64-67]. PA Perry of ETBS conducted a much more thorough review, including analyzing numerous medical tests. While Taylor asserts that his finding that she could return to work assumes her pain medication worked appropriately, she mischaracterizes the medical notes. Although PA Perry did place her on pain medication—Neurontin—he did not condition his determination that she could

14

return to work upon its success. Indeed, PA Perry specifically indicated two other options in case Neurontin was not successful. His overall finding was that she could return to work.

Furthermore, Liberty Mutual also permitted Taylor to submit additional medical reports for the purposes of her appeal. Based on his review, even Dr. Smith, despite recommending to keep Taylor off work, noted "there is no etiology to account for her right leg pain," and "there is not a focal abnormality on the lumbar myelogram [or] the MRI of the pelvis to account for her right leg pain in an S1 distribution." [AR at 27]. To be sure, Dr. Smith's opinion and, for that matter Dr. Puckett's, conflict with those held by ETBS. But Liberty Mutual explained why it relied on those opinions of ETBS and not those of Dr. Smith's and Dr. Puckett's. That is what the law requires it to do. The arbitrary and capricious standard is highly deferential and the Court is not permitted to substitute its own judgment for that of Liberty Mutual so long as it offers "a reasoned explanation, based on the evidence for its decision." *Evans*, 434 F.3d at 875.

The Court finds that Liberty Mutual's decision to terminate Taylor STD benefits was not arbitrary and capricious. Liberty Mutual's decision to rely upon the medical opinion of PA Perry and Dr. Wiles over Dr. Puckett and Dr. Smith was not arbitrary and capricious as it made such a choice based upon a reasoned explanation; specifically, that PA Perry and the team at ETBS conducted a more in depth and thorough review of Taylor than the others. This conclusion is supported by the administrative record. Accordingly, this Court respectfully RECOMMENDS that Taylor's motion for summary judgment as to STD benefits [Doc. 23] be DENIED and Liberty Mutual's motion for summary judgment as to STD benefits [Doc. 25] be GRANTED.

### 2. Long Term Disability Benefits

Additionally, Taylor asserts that she is entitled to long term disability ("LTD") benefits. [Doc. 23, pg. 2]. Liberty Mutual argues "at no time did [she] seek LTD benefits." [Doc. 26, pg.

15

15]. Liberty Mutual's argument suggests that even though it denied Taylor STD benefits, she should have not only appealed that denial, but also concomitantly applied for LTD benefits. But Taylor challenged Liberty Mutual's disability determination, which is the ultimate issue in this case. In any event, nothing in this regard changes the analysis or the Court's conclusion regarding Taylor's entitlement to LTD benefits. Liberty Mutual's decision to terminate Taylor's STD disability benefits was not arbitrary and capricious and neither is its decision not to award LTD benefits to Taylor in light of her medical condition regardless of whether she applied or not. Accordingly, this Court respectfully recommends that Taylor's motion for summary judgment as to LTD benefits [Doc. 23] be DENIED and Liberty Mutual's motion for summary judgment as to LTD benefits [Doc. 25] be GRANTED.

### D. Plaintiff's Entitlement to Attorney's Fees

Finally, Taylor asserts she is entitled to an award of attorney's fees. Title 29 of the United States Code section 1132(g)(1) provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The Sixth Circuit has identified the following factors to help determine if such fees are appropriate:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Warner v. DSM Pharma Chemicals N. Am., Inc.*, 425 F. App'x 677, 681 (6th Cir. 2011). While there is a circuit split as to whether a party must prevail in order to be awarded attorney's fees, courts in this circuit have found no such requirement as the statute does not expressly necessitate

it. *See McKay v. Reliance Standard Life Ins. Co.*, 654 F. Supp. 2d 731, 735 (E.D. Tenn. 2009); *Winpisinger v. Aurora Corp.*, 469 F. Supp. 782. 785 (N.D. Ohio 1979).

Taylor assets that all but one criteria are satisfied to justify awarding her fees. She concedes that she is not seeking to confer a common benefit on all other participants and beneficiaries of the Policy or resolve a significant legal question. However, Taylor insists that Liberty Mutal and Brock Services abused their discretion by ignoring their own doctor, which would meet the first criteria. Further, Taylor avers it is evident that both are in a position to satisfy such an award. Taylor then argues that if she is granted summary judgment, it would deter other similarly employers and plan administrators from ignoring their own physicians. Finally, she contends her position is meritorious.

The Court notes that it has resolved the issue of whether Liberty Mutual abused its discretion by relying on another physician in its favor. No bad faith is evident from the record nor is it plausible Taylor could demonstrate it. Liberty Mutual at numerous stages of review ensured it confirmed and reconfirmed Dr. Puckett's analysis and also took into consideration Dr. Smith's medical records and findings. It did not attempt to rush to judgment; indeed, Liberty Mutual extended Taylor's benefits far past the date that she was found able to return to work. Awarding attorney's fees based on this conduct would not serve as a deterrent effect. Although the Court does take judicial notice of the fact that Liberty Mutual is likely in a better position to satisfy such an award, that is the only factor that weighs in favor of Taylor. The Court notes that though counsel did an exemplary job of explaining their respective positions, the Court found that the law simply did not support Taylor in this instance.

17

Case 2:15-cv-00265-JRG-MCLC   Document 29   Filed 02/27/17   Page 17 of 18   PageID #: 705

Accordingly, this Court respectfully RECOMMENDS that Taylor's request for attorney's fees [Doc. 23] also be DENIED.[4]

Respectfully Submitted,

s/Clifton L. Corker
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).